[PHILADELPHIA, DECEMBER 29, 1828.]

## DIECHMAN, Administrator of SMULL, *against* The NORTHAMPTON BANK.

If the sheriff misapply money that comes into his hands, by paying one execution, with the proceeds of property sold under another, the party who receives the money, is not bound, provided he has acted fairly, to refund it, either to the sheriff or to the party whose money has been improperly paid away.    It is not necessary, on receiving a payment from the sheriff, to inquire out of what fund it is made.

On the trial of this cause at the Circuit Court of *Lehigh* county, before the Chief Justice, on the 17th of *April* last, it appeared that it was an action of assumpsit, brought by *John Diechman*, surviving administrator *de bonis non cum testamento annexo* of *George Smull*, deceased, against the *Northampton* Bank, for money had and received by the defendants to the use of the plaintiff.

The plaintiff claimed the sum of seven hundred and fifty-two dollars forty-five cents, with interest from the 29th of *October*, 1819, alleged to have been improperly received by the defendants, from the sheriff of *Lehigh* county, out of the proceeds of the sale of certain real estate of *George Smull*, deceased.

It appeared, that under several executions issued against *Peter Smull*, who was then the executor of *George Smull*, deceased, certain real estate of the said *George Smull* was sold, and the proceeds of sale, to the amount of three thousand, six hundred and twenty-eight dollars, and ten cents, came into the hands of the sheriff.    It further appeared, that certain personal property, belonging to the said *Peter Smull* had also been sold, the nett proceeds of which, amounting to one hundred and ninety-six dollars, and thirty-two cents, came into the sheriff's hands.    The *Northampton* Bank, on the 12th of *September*, 1817, obtained a judgment against *Peter Smull* individually, upon which a *Fieri Facias* issued to *August* Term, 1818, which was returned "*Levied on personal property.*"  A *Venditioni Exponas* issued to *November* Term, 1818, which was returned, "*Sale set aside by the court;*" and to *February* Term, 1819, an *alias Venditioni Exponas* issued,

(Diechman, Administrator of Smull, *v.* The Northampton Bank.)

which was returned, "*Debt and costs paid.*" There was no proof that any money had been paid by *Peter Smull* to the sheriff, on account of this judgment, and the sale of his personal property amounted to no more than the sum of one hundred and ninety-six dollars, and thirty-two cents, besides costs.

The sheriff paid to the cashier of the *Northampton* Bank, the sum of seven hundred and fifty-two dollars and forty-five cents, for which he gave a receipt in these words, viz:

"*Northampton* Bank, v. *Peter Smull.*

"Received, *October* the 29th, 1819, of *Anthony Musick,* (the sheriff,) seven hundred and fifty-two dollars, and forty-five cents, which includes four dollars, attorney's fee, for the *Northampton* Bank."

(Signed)   "*J. F. Ruke,* jr. cashier."

*Musick* proved the payment of this money to Mr. *Ruke* as cashier of the bank, but whether out of real or personal property, he could not say. He said that a statement made for him by Mr. *Henry King,* showing the distribution of the proceeds of the real estate of *George Smull,* deceased, was correct, and was made to show whether he was even or uneven with the real estate. He further stated, that he only settled the real estate: That the personal estate had been paid to others: That he was in the habit of depositing money in the bank, and sometimes paid parties by checks, and sometimes drew out the money himself and paid them.

The plaintiff then produced the proceedings in the Orphans' Court, in pursuance of which *Peter Smull* was on the 13th of *November,* 1819, discharged from the office of executor of the estate of *George Smull,* deceased; and the letters of administration *de bonis non* of the said estate, with the will annexed, which, on the 14th of *December* of the same year, were granted to the plaintiff.

The defendants, after having given in evidence the vendue papers of the personal estate of *Peter Smull* deceased, called *J. F. Ruke,* jr., the material part of whose testimony was, that in the year 1819, he was cashier of the *Northampton* Bank: That Sheriff *Musick,* by a check on the bank, paid into his hands as cashier, the sum of money in question, in payment of *Peter Smull's* note: That *Musick* had a running account with the bank, in which he made deposits from time to time: That at different times he had received discounts, and the witness thought, that previous to giving him the check above mentioned, he obtained a discount for about three hundred dollars, but he could not say whether or not the discount made part of the money paid to him: That the discount went to *Musick's* credit in his general account: That after drawing the check, the balance of his account did not amount to fifty dollars; and that Sheriff *Musick* never deposited money to the credit of any particular suit. Some further evidence was given, which it is not necessary to state.

(Diechman, Administrator of Smull, *v.* The Northampton Bank.)

The jury, under the direction of the court, found a verdict for the defendants; and a motion was made, by the plaintiff's counsel, for a new trial, for which the following reasons were filed:

1. That the court erred in charging the jury,

That money claimed to be recovered, must be traced, unless it has been received unfairly, or its receipt was contrary to common honesty.

That, if received in mistake, without fraud or improper conduct, it could not be recovered, unless its identity were established.

That the money claimed, could not be recovered from the defendants, if it did not appear, that, at the time of its receipt, the officers of the bank knew they were not entitled to receive it; and that, unless they received it, knowing they had no right to it, they could not be compelled to refund it.

That, if the officers of the bank received it in mistake, yet they are protected after this lapse of time, if its receipt originally took place under a belief that they were entitled to it, although that belief was incorrect.

That, unless the money received by the bank, was the identical money made by the sale of the real estate of *George Smull*, deceased, it could not be recovered in this suit; and that, if the money so paid, arose from the proceeds of other executions in Sheriff *Musick's* hands, or from discounts obtained by him, as his account in the bank was a mixed up one, the plaintiff could not recover, although, in accounting for the proceeds of the sale of the real estate of *George Smull*, deceased, Sheriff *Musick* took credit for the sum, as being paid out of those proceeds.

2. That, under the evidence in the cause, the court should have charged the jury, that if it appeared in evidence, that the late Sheriff *Musick* paid the defendants the amount of their judgment against *Peter Smull*, or any part of it, out of the proceeds of the sale of the real estate of *George Smull*, deceased, sold by him, the plaintiff was entitled to recover the amount so received by defendants, without establishing the identity of the money.

3. That it appeared in evidence, that on the 29th of *October*, 1819, the defendants did receive of *Anthony Musick*, as sheriff, seven hundred and fifty-two dollars, and forty-five cents, the whole of which, including the sum of sixty-eight dollars, and ninety-eight cents additional, was discharged by the proceeds of the said real estate, except the sum of one hundred and ninety-six dollars, and thirty-two cents; and, that, under this evidence, the court should have charged the jury, that the plaintiff was entitled to recover.

A new trial having been refused, an appeal was entered, on behalf of the plaintiff, to the court in bank.

*Brooke* and *Porter*, for the appellant.—It is perfectly clear, from the evidence, that the property of *George Smull*, deceased, has been appropriated, by the sheriff, to the payment of a debt due to the bank, by *Peter Smull*, in his individual character, and the question

(Diechman, Administrator of Smull, *v.* The Northampton Bank.)

is, whether the representative of *George Smull,* is entitled to recover back the money thus wrongfully paid? The bank knew, when they received this money, that it was paid out of a fund not applicable to the debt. The only money traced into the sheriff's hands, belonging to *Peter Smull,* was one hundred and ninety-six dollars and thirty-two cents. This the bank knew, or ought to have known, as they had pursued him to execution. The case comes within the well established rule, that wherever money is paid by mistake; wherever the plaintiff, in good conscience, ought to have it, or the defendant, in good conscience, ought not to retain it, it may be recovered in an action of *assumpsit.* It is not necessary, that the money should have been received against conscience; it is enough if it be so retained. 2 *Com. on Cont.* 35. *Moses* v. *M'Ferlan,* 2 *Burr.* 1005. 2 *Pothier on Obligations,* (*Evans' Edition, App.*) 378. *Union Bank* v. *Bank of United States,* 3 *Mass. Rep.* 74. *Dumond's Administrators* v. *Carpenter,* 3 *Johns.* 183. The sheriff holds money as a trustee for those who are entitled to receive it; and if he could, himself, recover from the bank, on the ground of its having been paid by mistake, (as he undoubtedly could,) and would then be bound to pay it over to the plaintiff, it may be recovered by the plaintiff, directly from the bank. If a person, who is a mere stakeholder, pay money to one, which he ought to have paid to another, he who is entitled to it, may recover it back, unless the contract was illegal. *Bridgm. N. P.* 60, *pl.* 268, 270. It is going too far, to say that the identity of the money must be established. It cannot be done; and if this be the true rule, it will destroy the action of *assumpsit,* where one man has received the money of another. Nor is privity between the parties, at all necessary. If the sheriff seize the goods of A., instead of those of B., and sell them, A. may recover the money, in an action of *assumpsit;* yet there is no privity. This has been long since determined.

If the court decide, that the bank may retain the money they have received, there will always be a scramble, whenever money comes into the sheriff's hands.

The circumstance of the plaintiff having slept so long before bringing his action, is easily explained. The case is peculiar. *Peter Smull* wasted the estate of the testator, and was ultimately dismissed from the executorship. After some time, the administrator *de bonis non* discovered the misappropriation of the money. The sheriff was insolvent, and it was in vain to look to him; and the bank having received what they were not entitled to, and, in equity, ought not to retain, this action was brought.

*Davis* and *Binney,* for the appellees.—From the 29th of *October,* 1819, the date of the receipt of the cashier, until the 18th of *November,* 1825, when this suit was brought, no intimation was ever given to the defendants, that there was any thing improper in their having

(Diechman, Administrator of Smull, *v.* The Northampton Bank.)

received the money in question. An application is now made to unravel the transaction, long after the sheriff has gone out of office; and certainly no case of stronger equity, as regards the defendants, or of greater inconvenience, as respects the profession, can be presented. If it be sustained, it will be necessary, wherever money comes into the hands of the sheriff, that he should pay it into court, under whose order alone, there will be any security in receiving it. When attornies receive money for their clients, inquiry is never made, out of what fund they are paid. To require them to make such an inquiry, would be attended with the utmost inconvenience in practice, and there is certainly no law to justify it. If the rule were established, that, wherever money is paid, the receiver must investigate the payer's right to pay, half the operations of mankind would be stopped. If the receiver, in good conscience, may receive the money, he is not bound to refund, however improper the conduct of the payer may have been as regards third persons. There is a wide distinction between money and a specific chattel. For the latter, an action of trover may be maintained, no matter into whose hands it may come, on the ground, that the property has not passed out of the original owner. But, with respect to money, which is the medium of commerce, and has no mark, it is different; and where there is no privity between the parties, it cannot be recovered back, unless it has been received *mala fide,* and the identical money of the plaintiff can be traced into the hands of the defendant. *Rapalje* v. *Emory,* 2 *Dall.* 54. This has been the law ever since *Clarke* v. *Shee, Cowp.* 197, the first case of any importance on the subject, in which a servant paid his master's money for the insurance of lottery tickets; and it was held, that the payment having been made *mala fide,* and received by the broker in violation of law, and the identical notes and money of the plaintiff having been traced into the defendant's hands, they might be recovered back in an action of *assumpsit.* The same principle is the ground work of the decision of *Rogers* v. *The Huntingdon Bank,* 12 *Serg. & Rawle,* 77. In the present case, the bank had no reason to believe, that the money was not regularly paid to them under their execution. This fact was left to the jury, who have found in their favour. There was, therefore, no want of conscience on the part of the bank; but there was on the part of the plaintiff, who laid by for more than six years, and made no demand until the sheriff had become insolvent. The sheriff himself, could not recover back this money. There was no evidence of mistake, on his part, as to fact. He knew where the money came from; and it is not pretended, that when he was paying the money of *George,* he supposed he was paying the money of *Peter.* If there was no mistake in point of fact, mistake in point of law avails nothing. No instance can be found in which a party, who has paid money, with a full knowledge of facts, but under an erroneous view of the law, has been permitted to recover

it back. *Pothier on Obligations*, 391.   The foundation, therefore, of the whole of the opposite argument is wanting.   There was no evidence of mistake.

But, if the mistake had been proved, the sheriff could not recover from the bank, whose answer to such a claim would be, you have no right to make this demand after a lapse of six years.   If *Musick* had filed a bill in equity, under such circumstances, (and an action for money had and received is a bill in equity,) it would have been dismissed; which would also have been the fate of a bill filed by him for the use of the party whose money he had paid in mistake, and who had slept so long upon his claim.

Granting, however, the right of the sheriff to recover, it by no means follows, that the plaintiff has the same right.   The sheriff is not the agent of the party, but the officer of the law.   *Stahle* v. *Spohn*, 8 *Serg. & Rawle*, 317.   Goods, after having been levied upon, become his property, and he may maintain trover for them.   When they are sold, the money is his, not indeed absolutely, but in a qualified sense, and subject to his duty as a law officer.   His payment was entirely independent of the plaintiff, who, if he is injured, must look to the sheriff, and not to the defendants, who did nothing against conscience in receiving the money.   To maintain this action, it is not enough, that the money has been unconscientiously paid; it must be unconscientiously received, also.

The opinion of the court was delivered by

Huston, J.—The *Northampton* Bank had a judgment against *Peter Smull*, individually, on the 12th of *September*, 1817. They issued a *Fieri Facias*, to *August*, 1818, which was returned "Levied on personal property." A *Venditioni Exponas*, issued to *November* Term; and an *Alias Venditioni Exponas*, to *February* Term, 1819, which was returned, "Debt and costs paid." The sheriff, who was called, produced the receipt of the cashier. The cashier was called, who proved that the sheriff kept an account in the bank, but not a separate account for each suit; that his funds in the bank, at the time of paying this money, consisted of deposits, and the proceeds of a note discounted for the sheriff in the bank; that the debt was paid by a check.   Evidence, however, was given to prove that the personal property of *P. Smull* did not sell for the amount of this debt, nay, for only about one quarter of it.

It also appeared, that *Peter Smull* was the executor of *George Smull*, at that time, (though since removed, and the plaintiff substituted in his place;) that there were three several judgments against *Peter Smull*, executor of *George Smull*, amounting to about three thousand six hundred dollars, on which lands of *George Smull*, deceased, were sold to that amount; and it was alleged that part of the money raised by the sale of the lands of *George Smull*, was applied by the sheriff to pay this debt of *Peter's* to the *Northampton* Bank.

(Diechman, Administrator of Smull, *v.* The Northampton Bank.)

The judge left it to the jury to determine, whether there was any evidence that this money paid to the bank, arose from the sale of *G. Smull's* estate, on which subject, the evidence was far from conclusive; and told them, in substance, that even if it should be found that this money or part of it arose from the sale of the said lands, yet if the bank or their officers did not know it to be from that source, if the bank acted fairly and received their money from an officer who had process to collect it, and who appeared to have collected it, they could keep it, and were not liable to refund it *unless some fraud* or unfairness had been used by them to induce the sheriff to pay the money which they knew belonged to other people, in discharge of their debt. There was no error in the charge, and this case admits of no doubt. The doctrine that if a man pays money by mistake, does not apply to a case like this. I believe no sheriff keeps an account in bank for every different suit put into his hands. The plaintiff, whose execution he has levied and on which he has sold, has a right to apply for his money, and if it is paid him, he may safely take it and give a receipt. He is not bound to inquire, whether this is the identical money made by the sale of his debtor's goods: to make such inquiry, would be impertinent. If he receives no more than was due, he is not answerable for that money to any person. It would be intolerable if a plaintiff, after expense and delay in collecting a debt, should subject himself to twenty suits by receiving it; and, according to the plaintiff's doctrine, he would do so, if twenty persons could prove that a part of the money belonging to them, was used by the sheriff in paying that person.

It too often happens that sheriffs misapply money. The misapplication of money belonging to one man, leads to misapplication of the next money coming into his hands, and so on to the end of his office; and thus every execution would give rise to a new suit. But, in these cases, there is no mistake: the sheriff knows he is misapplying money; he who receives it does not know it, but he knows he is receiving what the sheriff owes him, and he is not bound to know more. The sheriff himself could not, in such case, recover it back. The sheriff and his sureties were liable, perhaps, to the plaintiff; the bank never was, and, if it was, from the facts and dates in this case, the statute of limitations, which was pleaded, was a bar to the plaintiff's recovery. The cases of *Rapalje* v. *Emory*, in 2 *Dall.* 51, and *Rogers* v. *The Huntingdon Bank*, 12 *Serg. & Rawle*, 77, are much stronger than this.

Smith, J., having been employed as counsel in the cause, took no part in the decision.

                                        Judgment affirmed.