Tiffany & Co. *v.* Johnson & Robinson et al.

---

## O. C. TIFFANY & Co. *v.* JOHNSON & ROBINSON et al.

Where T. & Co. held a judgment against K., and J. & R., and L. also held judgments against K., upon which *nulla bona* returns had been made, which judgments were older than T. & Co.'s; but the counsel of T. & Co. had an execution issued upon their judgment, and it was levied on certain property of K., which had been found by counsel and sold under that execution, and the purchaser paid sufficient of the purchase-money to satisfy the cost of the suit and the attorney's fee, and he then executed a note to T. & Co. for the balance, which was placed in the hands of their counsel; and J. & R., and L. after this was done filed this bill against T. & Co., their counsel and the vendee, praying that the money paid and note given to T. & Co. may be held in

trust and delivered up, to be applied in satisfaction of their judgments against K.: — *Held,* the bill ought not to be sustained.

The record does not show what return was made upon the execution of T. & Co., and if the return showed that the sheriff took the note of the purchaser instead of making the money as commanded, it would show an act unauthorized by law, and the parties to whom the money was going made on the execution, could derive no benefit from such an act, unless done by their consent: — *Held,* that such a return and sale would be declared void and set aside, except as to the parties consenting to it.

If a sheriff return that he has made the money and satisfied an execution, though in fact he has received payment otherwise than in money, such a return would hold him liable for the money to the parties entitled to it, and it would conclude him from denying that he had received the money.

This case must be considered as if the sheriff returned upon the execution of T. & Co., that he had made the money to the amount for which the property sold.

The rule is applicable as well in equity as in courts of common law, that money paid with a full knowledge of the facts, but through ignorance of law, is not recoverable, if there be nothing unconscientious in retaining it.

Where a party by superior diligence seeks out property and has his execution levied on it, and there is no other execution in the hands of the officer at the time, there is nothing unconscientious in permitting him to enjoy the fruits of his diligence.

On appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

This was a bill filed in April, 1845, in the superior court of chancery, and states that Johnson & Robinson recovered judgment 26th October, 1842, against W. W. Kincheloe for $558.53. That A. Lee, same date, recovered judgment for $621.29. Writs of *fieri facias* issued to April term, 1843, and were returned *nulla bona.* These judgments were duly enrolled 25th April, 1844. On the 11th June, 1844, O. C. Tiffany & Co. recovered judgment for $1,841.65, which was enrolled 5th July, 1844. On the       day of       by virtue of an execution on the last judgment, the sheriff of Warren sold about eight hundred cords of wood and other personal property, and Buck became the purchaser at the sum of $1,340. That Mason & Burwell are attorneys of record of O. C. Tiffany & Co., and as attorneys have receipted to the sheriff for the sum of $1,339.91, proceeds of sale, which they claim to be due to their clients. Buck gave in part payment his note for $1,270, due about 15th March,

1845, payable to O. C. Tiffany & Co., or Mason & Burwell, held by latter for their clients, which note was received as cash, and receipt given to sheriff for the amount as cash. The balance was paid in cash. Said money and note are still in the hands of Mason & Burwell as attorneys for the use of O. C. Tiffany & Co. The judgment in favor of Johnson & Robinson is the oldest judgment, and Lee's next oldest, and it was the duty of the sheriff to have paid the amount to them according to legal priority. Mason & Burwell, well knowing that such was the duty of the sheriff, would not permit the proceeds to go into the hands of the sheriff, but received the same themselves from Buck, and gave a receipt to the sheriff as above stated.

The court decreed in favor of complainants, and Tiffany & Co. appealed to this court.

*Mason & Burwell* for appellants.

Money paid under mistake or ignorance of law cannot be recovered back in an action for money had and received. *Mayor, &c.* v. *Judah,* 5 Leigh, 305; *Bean* v. *Jones,* 8 N. Hamp. 149; *Trustees, &c.* v. *Keller,* 1 Ala. 406.

Money paid on a check when the drawer had no funds, there being no fraud in the drawee, cannot be recovered back. *Hull* v. *State Bank,* Dudley, S. C. 259.

The sheriff may be likened to a bank. He has funds to pay over. It is his business, and not the duty of the person who draws the funds, to see that the funds are rightly paid over. If the sheriff could not sue to recover the money, still less could any other person. If there is no duty on the person who receives, there can be no implied trust or assumpsit growing out of it.

Where money is voluntarily paid, assumpsit will not lie to recover it. *Sprague* v. *Birdsall,* 2 Cow. 419.

Where a party might in good conscience receive the money, he is not liable to refund it. 1 Dall. 148; *Webber* v. *Aldrich,* 2 N. Hamp. 461.

A sale of chattels under junior execution is valid, and the only remedy of senior execution is against the sheriff. *Sandford* v. *Roosa,* 12 J. R. 162.

" The sheriff cannot appropriate money to a judgment where he has no process in his hands." *Reynolds* v. *Ingersoll,* Opinion of November session, 1848.

" If the sheriff applies money wrongfully it is just as if he had pocketed the money himself." Ib.

I should like to see some law making the plaintiff responsible, directly or indirectly, for the acts of the sheriff. I had always thought that the sheriff acted on his own and a strict responsibility. It is so laid down in all the books. The sheriff is not under control of the parties. He acts for himself. If he does wrong he is liable to the party grieved, but it would be strange if this subjected to an action persons who were guilty of no wrong. *Heizer* v. *Fisher et al.,* 13 S. & M. 675.

The judgments of Johnson and Lee were satisfied by the sale for costs to defendant Kincheloe. See act for sale of judgments. They could not be revived by an after redemption. Same act. If this money goes to them, it goes to defendant. If there is equity in that, we are at a loss to find it.

*Smedes* and *Marshall* for appellees.

Mr. Justice HANDY delivered the opinion of the court.

The facts of this case seem to be, that the complainants, Johnson & Robinson, and Abram Lee, recovered judgments in the circuit court of Warren county, against one Kincheloe, on the 26th October, 1842, which were both placed on the "judgment roll" of that county, on the 25th April, 1844. O. C. Tiffany & Co. also recovered judgment against Kincheloe in the same court on the 11th June, 1844, which was enrolled on the 5th July, 1844. Executions were issued on the complainants' judgments to the April term, 1843, and returned *nulla bona,* and in the year 1845 an execution was issued on the judgment of Tiffany & Co., which was levied upon a quantity of cord wood, and other personal property of the defendant, which was sold at sheriff's sale and purchased by one Buck, who, by an arrangement made with Mason & Burwell, the plaintiffs' attorneys, executed his note payable to Tiffany & Co. for $1,270, and for the balance of the purchase-money, paid

Tiffany & Co. *v.* Johnson & Robinson et al.

the costs of the execution and taxes due from Kincheloe, and the sum of $69.90 in cash; which last sum was paid by the sheriff to the attorneys Mason & Burwell, who thereupon executed a receipt to the sheriff for the money received by them, including the amount of the note, which was receipted for as so much cash. The note is in the hands or under the control of Mason & Burwell, who hold it as the property of Tiffany & Co. It appears that the whole transaction was carried on by the consent and arrangement of the sheriff, and Mason and Burwell do not appear to have had any actual knowledge of the prior judgments of the complainants, or to have done any thing for the purpose of defeating the application of the money to their judgments, but to have acted solely to promote the interest of their clients, and to have made the arrangement with regard to the note in order to make the property sell for a better price than it would otherwise have done, it being likely otherwise to sell for very little.

The bill is filed against Tiffany & Co., Mason & Burwell, and Buck, and prays that Mason & Burwell be decreed to hold the money and note in their hands as trustees for the complainants, who claim that they were entitled to the fund, and that it was the duty of the sheriff to apply the money and proceeds of sale to their judgments, because they were senior in date and in the judgment roll to that of Tiffany & Co., and that the money and note be delivered up to the complainants. The chancellor decreed accordingly, and from that decree this appeal is taken.

It does not appear by the record what return was made by the sheriff on the execution of Tiffany & Co. If the return showed that the sheriff took the note of the purchaser instead of making the money as he was commanded to do by the writ, it would show an act unauthorized by law, and the parties who might be entitled to money made on execution could derive no benefit from such an act unless it was done by their consent. In such a case, they could not move the court for an appropriation of the money, nor could the court make an appropriation of it to the parties entitled, because there would be no money within the power of the court. Such a return and sale would

be declared void and set aside, except as to parties consenting to it. But it would be otherwise, if the sheriff returned that he had made the money and satisfied the execution thereby, though in fact he had received payment otherwise than in money; for such a return would render him liable for money to the parties entitled to it, and would conclude him from denying that he had received money. Here the bill shows that the complainants could not have consented to the sale being made for the note of the purchaser; and as to them the sale, if so returned on the writ, would be void, and they would have a right to set aside the return and issue their executions, and sell the property under them. Therefore, unless the sheriff's return showed that he made the money under the execution, these complainants can have no relief in equity against the defendants; for they could have no claim against the defendants where the sheriff could not have been required to apply the money to their judgments. The case must, therefore, be considered as if the sheriff had returned upon the execution of Tiffany & Co. that he had made the money to the amount for which the property was sold.

Regarding the transaction as a payment of money by the sheriff to a junior execution instead of senior judgments which were entitled to it; the first question arising is, can the plaintiffs in the senior judgments come into equity to enforce their claim against the parties who received the money?

The sheriff is not a party to this suit, nor does it appear by any thing shown by the pleadings but that the complainants could have proceeded against him and his sureties by motion for the money to which they allege that they were entitled. The only ground upon which any equitable claim can be placed is, that the sheriff is liable to the complainants, and that Tiffany & Co., or their attorneys, having received money which should have been paid to them, the sheriff would have a right to recover it from the parties who received it; and that the complainants are entitled in equity to the same right which the sheriff had against Tiffany & Co., or their attorneys. Conceding that such a right could be exercised under certain circumstances, could it be done without showing facts justifying the

interposition of a court of equity, such as that for certain reasons the remedy against the sheriff and his sureties was not available at law, or that the proceeding was instituted in aid of the rights of the sheriff, he being a party to it? We think not. But could the sheriff assert any such right either at law or in equity? There is no pretence that any fraud or undue means were used in the transaction to the prejudice of the sheriff, and the most that can be made of it is, that the sheriff gave Tiffany & Co. the avails of their execution under a mistake of law. The appropriation was freely and voluntarily made by him, in the exercise of a judgment which, under certain circumstances, was conferred upon him by law, to parties who could receive it without any unconscientious advantage taken by any act of theirs. If under such circumstances, and through a mistaken view of the law, the sheriff applied the proceeds of the sale to their execution, it is clear that he could not recover it back. The rule is, that money paid with a full knowledge of the facts, but through ignorance of law, is not recoverable if there be nothing unconscientious in retaining it. And this rule applies as well in courts of equity as in courts of law. Broom's Legal Maxims, 192; Ib. 197; *Diechman* v. *North. Bank,* 1 Rawle, 54.

There is certainly nothing unconcientious in the defendants here retaining the avails of their execution. The complainants had taken no step for several years to enforce their executions, and by the diligence of the defendants, their execution was levied, an advantageous sale was effected, and the proceeds applied to their claim, a valid execution and the only one in the sheriff's hands. There is not only nothing unconscientious in permitting them to enjoy the fruits of their diligence, but it could never be permitted to parties occupying the position of these complainants to deprive them of the benefit of their executions, except in obedience to some imperative rule of law, and no such rule exists under the peculiar facts of this case.

Nor can it be said that Mason & Burwell are to be considered as holding the fund as trustees, and that the complainants are entitled to it on that ground. The complainants never had any specific lien upon the fund, and the defendants received it by

20 *

appropriation of the sheriff, upon a valid execution in his hands belonging to them, which was thereby satisfied to the amount received. If the sale and return were irregular and invalid, the complainants could have had it set aside, and issued their executions against the property; if the proceedings were regular and legal, they had an ample remedy by reason of their superior claim to the money for which the sheriff had become responsible, by suit or motion against him and his sureties. Thus, in either point of view, their rights were secured, and their remedy plain. It is above shown that the sheriff could not recover the money paid by him through mistake, much less could he treat the note in Mason & Burwell's hands as held in trust for him. Nor can the complainants claim any equity through him over the fund which he could not have exercised. The question is not affected by the fact that the fund has not been paid over to Tiffany & Co. by Mason & Burwell. It has been received by them from the sheriff, discharged of any specific claim of the complainants, and their execution has been entered satisfied to the extent of the fund. They have thus given a valuable consideration for it, to which they cannot be restored if they are compelled to surrender the fund, and they are entitled to the benefit of it to the same extent as if the sheriff had paid them the money in satisfaction of their execution.

In any point of view in which the case can be considered, we think the bill cannot be maintained.

The decree is reversed and the bill dismissed.