JOHN F. GAY et al., Appellants, *v.* A. EDWARDS & Co., et al., Appellees.

1. APPEAL.—The statute requiring bond and security in cases of appeals from the Chancery Court, only applies to final decrees in that court; the chancellor may, therefore, allow a defendant to appeal from the decree of the court, overruling his demurrer to a bill, without requiring him to execute an appeal bond.

2. STATUTE OF LIMITATIONS: DIRECT TRUSTS.—In cases of direct technical trusts, the Statute of Limitations will not run in favor of the trustee, or a third party, who has received the trust funds with full notice of the trust, and under an agreement to account for them.

3. PAYMENT OF JUDGMENT.—If, in a contest between several judgment creditors in the Circuit Court, in relation to the application of certain money in the hands of the sheriff, the creditors whose claims were postponed, signify their intention to appeal or sue out a writ of error, and it be thereupon agreed between all the parties, that the sheriff shall loan out the money for the benefit of the party who

may succeed in the litigation; if the creditor, whose claim was preferred by the Circuit Court, receive said money from the sheriff in payment of his judgment, he will be compelled to refund it, if upon the determination of the writ of error, his claim shall not be sustained, although he receive the money before the writ of error was sued out, and whilst the judgment in his favor was good and unreversed.

4. EQUITY: JURISDICTION.—A court of equity will entertain jurisdiction for the recovery of a fund, in which the several complainants are separately interested, the share of each being unascertained, and depending upon a *pro rata* distribution of the fund, upon an account to be taken.

5. Equity has jurisdiction where there are several defendants, who, together, are responsible for the entire fund sought to be recovered, where such liability is separate, and not joint, and the amount of the liability of each can only be known by a discovery from them.

APPEAL from the District Chancery Court, at Macon. Hon. Henry Dickinson, vice chancellor.

The appellees, A. Edwards & Co., Richard Kingsland & Co., T. M. Wiley & Co., Smith, Wright & Co., and Timothy T. Kissom, on the 3rd day of October, A. D. 1853, filed their bill in the court below, against Joseph F. Gay, James Turner and Benjamin Toomer, merchants and partners, under the firm, name, and style of Toomer, Gay & Co., James M. Wynne and Reuben King, in which they alleged in substance, as follows : That on the 15th day of May, A. D. 1845, said Toomer, Gay & Co., and complainants, A. Edwards & Co., Spears & Vanderhook, and Richards, Kingsland & Co., instituted their several suits of attachment against said Reuben King, in the Circuit Court of Lowndes County, and which several attachments were levied on the same day on a stock of goods. That, afterwards, on the 12th day of November, A. D. 1845, the other complainants instituted their several suits of attachment against the said Reuben King, and which last were also levied on the same day on the said stock of goods. That one Charles King claimed the said goods as his own, under the statute, and that all the parties, apprehending that the litigation would be long continued, and that the goods would become damaged and unsaleable, if retained by the sheriff until the termination of the litigation, agreed that the defendant, Wynne, (who was at that time sheriff, and had the goods in his possession,) should sell the same at public auction, on a credit of twelve months, taking notes

and good security for the purchase-money. That these notes should be held by said Wynne, for the benefit of the parties in litigation, and that he should pay, or hand them over to the party or parties to whom the court should adjudge them. That such proceedings were thereupon had, that judgments were rendered in favor of the several attachment creditors, and the claim of said Charles King to the goods, adjudged and determined to be invalid. That said Wynne, in pursuance of the agreement, sold the stock of goods in the fall of 1845. That at the March term, A. D. 1849, of the Circuit Court of Lowndes county, after the rendition of the said several judgments, the said Wynne moved the said court for instructions, as to the mode of the appropriation of the proceeds of said sale of goods, they being insufficient to discharge the several judgments aforesaid. That, on the trial of said motion, the complainants resisted the claim of Toomer, Gay & Co., to any of said proceeds, because their judgment was void, for want of notice to said Reuben King. That the Circuit Court determined that said Toomer, Gay & Co., were entitled to their *pro rata* share of said sale, equally with the complainants, whose attachments were levied on the same goods with theirs, and in preference to the judgments of the other complainants, whose attachments had been levied afterwards.

That the complainants were dissatisfied with said judgment, and then and there notified said Toomer, Gay & Co., and said Wynne, of their intention to appeal or sue out a writ of error, and have the matter revised by the High Court of Errors and Appeals of this state. That it was then agreed between all the parties, that the said Wynne, who had collected a large portion of the proceeds of said sale of goods, should loan out the money at interest, for the benefit of all parties, and that it should finally be paid over and appropriated to the parties, according as their rights thereto might be finally settled.

That they, the complainants, sued out a writ of error, returnable to the term of the High Court next succeeding the term of the said Circuit Court, at which said judgment had been rendered. That the High Court determined said cause in their favor, and reversed said judgment; and thereupon the said Circuit Court, in

Gay et al. *v.* Edwards et al.

obedience to the mandate of said High Court, adjudged that the judgment of said Toomer, Gay & Co. was void, and that they were entitled to no part of the proceeds of said sale. That, relying upon the agreement, they did not, during the pendency of their writ of error, supersede the judgment of the Circuit Court, adjudging the money to said Toomer, Gay & Co.

That the sheriff, Wynne, in pursuance of said agreement, did loan out a part of said money to one John S. Toft, which has been paid. That he advanced, at different times, to said John F. Gay, one of the firm of Toomer, Gay & Co., and who represented that he was the assignee of their judgment, a large sum of such money, which, they are informed, is about $3900, without taking his note for the same, or any writing, except his receipt for the same, as a payment on said judgment of Toomer, Gay & Co. That Wynne alleges he made this payment before the writ of error was sued out. They also charge that the payments made to said Gay, were made with the understanding and promise, that he should refund the same, if the judgment of said Toomer, Gay & Co. were excluded. That Wynne has failed to return an account of his said sales, and that he refuses to permit the complainants to use his name in a suit at law against said Gay, for the recovery of the money so paid him; and that they do not know the amount of means now in the hands of said Wynne. That the sales, however, were, and are still insufficient to pay the said debts, and that Wynne and Gay both refuse to pay the sums in their hands, and that their judgments are still unsatisfied. That complainants, A. Edwards, Spears & Vanderhook, and Richards, Kingsland & Co., are entitled first to be paid out of said fund, and that the other complainants are then entitled to receive the surplus, *pro rata*, according to the amounts of their respective judgments.

They pray for an account and a discovery, and for such relief as they are in equity entitled to.

To this bill, Gay, Wynne, and Turner demurred:—

1. Want of equity on the face of the bill.

2. No such case is presented by the bill, as entitles complainants to the relief sought.

3. There is a full and adequate remedy at law.

4. Defect of parties, and for other causes apparent on the face of the bill.

· The demurrer was overruled, and the defendants, Gay, Wynne, and Turner, prayed for an appeal to this court, which the court granted without requiring, and without the appellants executing any appeal bond.

The appellees moved in this court, that the appeal be dismissed for want of an appeal bond.

*Christian* and *Barry*, for the motion, and

*James T. Harrison, contrà.*

HANDY, J., delivered the opinion of the court.

This is an appeal from an interlocutory decree of the District Chancery Court at Columbus, overruling a demurrer to the bill.

The appellees move to dismiss the appeal, because no bond was required by the chancellor in granting the appeal, and none has been executed, and the question is, whether a bond is necessary in such a case, in order to an appeal.

It is settled by this court, that in case of a final decree in a court of chancery, the execution and approval of an appeal bond, are conditions precedent to the prosecution of the appeal, because such is the spirit of the statute authorizing the appeal. And the reason of the statute plainly is, that such an appeal prevents the successful party from proceeding to execute his decree.

But in the case of a demurrer to a bill overruled, no right to money or specific property is fixed, and no decree is prevented from being enforced by the appeal. Hence the statute does not in that case, as in the one of a final decree, provide that a bond shall be executed, nor can the provision of the statute, in the case of a final decree, be made applicable to such interlocutory decree, because the condition of the bond prescribed by the statute " to pay, satisfy, and perform the decree on final order" appealed from, would be entirely unsuitable to the state of the case upon such interlocutory appeal. The order in such case is merely that the defendant be required to answer the bill.

It is the practice generally, and we think it the better practice,

to require a bond for the costs, and there might possibly be cases in which it would be proper to require a more ample bond. But the statute has not in such cases required a bond as indispensable to the appeal, and it must therefore be presumed that the legislature did not consider that the nature of the case required the security of a bond as a condition to the appeal.

The motion is overruled.

And afterwards the cause was submitted on final hearing in the court.

*Harrison* and *Crusoe*, for appellants.

The demurrer was well taken, and there is error in the decree of the court overruling the same. First, as to Gay, this attachment was among the first sued out and levied, as he supposed a valid judgment was entered up. Notwithstanding the judgment, the sheriff by motion asks instructions as to the application of the fund in his hands, and under those instructions, and in accordance with the judgment of a competent court, and whilst that judgment is in full force, and before any action is taken to procure a writ of error even, the payment was made by the sheriff to Gay, a receipt therefor given the sheriff, and the judgment *credited* and *satisfied* to the extent of the *payment*.

This money is now by the bill sought to be recovered back from Gay, by the complainants, upon the ground that his judgment was subsequently reversed, and that they have a lien on this fund, &c. Is the plaintiff in that judgment, or the sheriff who thus applied the fund, liable for the same, and will a court of equity take jurisdiction and decree its repayment? If there is a remedy, is it not properly cognizable at law? It will be noticed that as to Gay no *discovery* is sought: the exact amount paid him is alleged in the bill, $3951. There is no allegation of fraud made. It is not pretended that the attachment of Toomer, Gay & Co., was wrongfully sued out, but that the judgment against the defendant was irregular for want of notice. If this be the case, the attachment is still in court; the attachment takes its lien, not from the judgment but from the levy. There was subsisting process and unreversed

judgment and order of court to the sheriff to pay the money as it was paid. In accordance with that judgment and order, which certainly was obligatory until reversed, the money was paid, and satisfaction *entered* on judgment to the amount *received;* it was the duty of the officer to obey the mandate and judgment of the court, and if defendants were dissatisfied, they should have superseded the judgment and sued out their writ of error, and not remained passive until the payments had been made.

Money paid through ignorance of law, is not recoverable either in law or equity. *Tiffany* v. *Johnson et al.*, 27 Miss. R. 232; 1 Ala. R. 408; 17 Mass. R. 394.

The case in 27 Miss. R. 232, was a case in many respects similar to the one at bar, where a senior judgment creditor sought to reach a fund, which was alleged to have been wrongfully applied to a junior lien, &c., and is specially referred to. In that case it was held, that the plaintiffs in the senior judgments could not come into equity to enforce their claim against the parties who received the money. In the case at bar, there is nothing unconscientious in permitting the plaintiff, Gay, to retain the money: it is not pretended, but that his claim was valid, and the defendant justly indebted to him: the judgment by default was subsequently reversed, yet the case is still in court. And if the principle is established, that because a party may succeed in obtaining the first judgment on his claim, he thereby acquires a priority over pending attachment liens, though levied first, it must in effect operate as virtual destruction of the lien given by statute from the date of levy. It is not the judgment, but the levy, that gives the lien. In the case of *Oldham* v. *Ledbetter*, 1 How. R. 48, it was held by this court, "that an attachment being a proceeding *in rem*, operates by the levy an assignment in law of *choses in action*, and a transfer of chattels and lands to the creditor; and that the sale is not made for the purpose of changing the ownership, but to ascertain the value;" and in 4 S. & M. 592, that it is the levy that gives the lien, &c. 1 How. 48.

The judgment gives no lien: here the creditors of the one part and the claimants of the other, agree that the sheriff shall sell the property, the proceeds to be distributed as if property had been regu-

Gay et al. *v.* Edwards et al.

larly sold—*pro rata* among all creditors. How can this be done until the suits are definitely disposed of? Surely the reversal of the judgment against the defendant in attachment does not operate as a dismissal of his suit; nor, because a judgment may be rendered on a junior attachment, first, does it give a priority over a prior attachment, upon which a judgment may subsequently be rendered.

2. If complainants have a right to the fund, they are barred by the Statute of Limitations, which may be taken advantage of by demurrer. The goods were sold in 1845; the payments by sheriff to Gay in 1849. A. Edwards & Co.'s judgment rendered on 29th September, 1848. This bill filed in 1854. 25 Miss. R. 27.

3. Again, if plaintiffs have a remedy, is it not at law? If, as they allege, their judgments are entitled to the fund, the fund, or at least that portion now sought to be recovered of Gay, was in court, in the hands of the sheriff, and if he misapplied it, an ample remedy is afforded by proceedings against him and sureties, at common law. 27 Miss. R. 232. And it is not alleged that any other portion has ever come to his, Gay's hands, except $3991, paid him and credited on his judgment or claim, and the sum of $1500, for which, as alleged, he executed his note, which is now in the hands of complainants, and for which, as they allege, they have given the sheriff credit. If they have the note, their remedy at law is complete on it, nor could the nominal payee prevent a suit being instituted on it; so if the agreements alleged be binding, and under the circumstances invest complainants with a right to the fund, what is there to prevent a suit on the written agreement? Surely, if they are barred by the Statute of Limitations, this in itself would afford no reason for a court of equity to interfere.

The bill seeks no discovery as against Gay. The amount he received is stated in the bill, ($3991.) It is true, that so far as the sheriff is concerned, it is alleged that they are not advised of the amount in his hands; but this would not give a court of equity jurisdiction. The circuit courts are vested with full and adequate powers to compel discoveries, in aid of actions at law depending therein, whenever by the rules of equity a discovery would be compelled in a court of equity. Hutch. Code, 865, 871; 11 How. R. 596; 13 S. & M. 325.

In the case of *Brown* v. *Scrann*, 10 Peters, R. 500, the court, in speaking of the jurisdiction of a court of equity say: "The jurisdiction of a court of equity in this regard, rests upon the inability of the courts of common law to obtain or compel such testimony to be given. The courts of common law having full power, chancery will not interfere. 10 Peters, R. 501.

In this state, the power is given the circuit courts, full and adequate; and a bill for this purpose alone, at least in this state, cannot be sustained. 13 S. & M. 325.

A bill of discovery will not lie for matter of which plaintiff has means of proof, or of matter of which he has the same means of information as defendant. 1 Bald. R. 394; 2 Mumf. 260; 21 Hen. & Mumf. 478.

Again, a court of equity will not decree even specific performance of a contract for personal property, except in those cases where *damages* will not answer the intention of parties. 3 Cow. R. 445, 505; 2 Story, Eq. § 718; *Saury* v. *Spence*, 13 Ala. R. 561.

*R. Evans*, for appellees.

The complainants have rights, either equitable or legal. If equitable, this is of course the tribunal to pursue them in; and if their rights are legal rights, then the question will be, may they be pursued in equity?

If the sheriff. had been left to proceed according to the statute relative to suits by attachment, the whole matter would have continued under the statute, and would have been consummated in the Circuit Court, and equity would not have been called on to interfere.

But here, by agreement between all concerned, and for the benefit of all, the statute was departed from, the goods sold at twelve months, the sheriff constituted trustee for the benefit of all concerned: and after the litigation ended, the matter was to be settled according to the trust and confidence of each in the others of the parties to the said agreement: it is peculiarly a case of mutual trust and confidence. This same mutual trust and confidence mark the agreement between Toomer, Gay & Co., and the complainants,—as to the putting the money in the sheriff's hands

Gay et al. *v.* Edwards et al.

at interest, during the pendency of the litigation of his motion for instructions, &c. The sheriff is made trustee. The trustee and one of the parties, Toomer, Gay & Co., enter into a combination: the sheriff pays, and Gay takes as payment, a part of the money, when at the time the judgment on which payment was made was null and void. This was a fraud on the valid judgment, and was a breach of the trust reposed in Wynne, as trustee. Again, Wynne is responsible for this money, in his character of trustee.

His payment of it to Gay, as a payment on the judgment of Toomer, Gay & Co., was in breach of the trust reposed in him. He is amenable not as sheriff, but as trustee.

Again, the fund is one and the same fund: it belongs to one and the same purpose, to wit; the payment of the judgment against King. Three of these judgments are to be paid first, and to be paid *pro rata.* The three other judgments are to be paid last, and also *pro rata.* It may be, that the whole fund will be consumed by the three first judgments, and nothing be left for the last. Here are rights which a court of law is incompetent to parcel out to the several claimants. It is absolutely essential to have an account stated.

If the complainants should sue at law, what action would they institute? At law, each is entitled, by virtue of the levy in attachment, to a separate and distinct part of the property attached. Each must sue for his own specific proceeds of the specific property levied on by his own attachment. In contemplation of law, the levies are separate and distinct. A joint action at law could not be sustained.

Can they sue separately? Suppose the three last creditors should sue; the levy of the first three would be pleaded to show that they had no right, and the plea would be effectual. In contemplation of law, the sheriff only levies on enough to satisfy the attachment on execution; an excessive levy is a breach of his duty, and it is never presumed to be excessive. The first three attachments were levied on all the property, and consequently the three last must be nonsuited.

In the present case, the separate and distinct natures of the levies were by the agreement of the parties, the sale of the attached

goods under it; and the subsequent proceedings merged into inter-
mingled rights and equities which a court of law is incompetent to
administer; and in fact a court of law has no jurisdiction over
such rights.

Again, the legal right to the money and notes in the hands of
Gay and Wynne, is in Wynne. Wynne, as sheriff, became pos-
sessed of the legal title by his seizure under the attachment, and
that legal title has continued in him through the sale, the notes
taken, money collected, and lent, and in the money improperly
paid to Gay on a void judgment, by the acts of the parties as well
as by operation of law.

Wynne, as trustee, has then the legal title, and is the only one
who can sue at law.

The complainants cannot sue at law, because they have not the
legal, but only the equitable title.

The trustee will not sue, and will not permit his name to be
used by complainants; and moreover, the trustee is charged with
combination with Gay, in relation to the trust fund.

*Barry* and *Christian*, on same side.

HANDY, J., delivered the opinion of the court.

This is an appeal from an interlocutory decree of the District
Chancery Court at Macon, overruling a demurrer to a bill.

It appears by the bill, that the complainants and defendants,
who were creditors of one Reuben King, sued out attachments at
law against him for a large amount, which were levied upon certain
goods and merchandise, and that a third party laid claim to the
property, under the statute for the trial of the title; that it was
agreed between all the parties, that the sheriff should sell the goods
attached, on a credit, taking notes to secure the payment of the
purchase-money, and the proceeds to be paid to the successful
party: that in the year 1848, the claim of property was defeated,
and the plaintiffs in attachment obtained judgments; and there
not being a sufficient amount of money to pay all the judgments,
a motion for an appropriation of the fund was made in the Circuit
Court; upon which the court ordered the money to be paid to the
plaintiffs, according to the priority of the levies of the respective

attachments.  From this order, the complainants in this bill prosecuted a writ of error, and this court reversed the judgment of the Circuit Court, and held that the judgment or attachment of Toomer, Gay & Co., was void, remanding the case and directing distribution of the fund, to and among the complainants in this bill, to the exclusion of the judgment of Toomer, Gay & Co. Before the writ of error was taken, it was agreed between all the parties interested, that the sheriff should put out the funds into safe hands on interest, to be paid over to the parties who might be found to be entitled at the end of the litigation; and under this authority, some time after the judgment of distribution in the Circuit Court, and the suing out of the writ of error, and in the year 1849, the sheriff placed a part of the funds in the hands of the defendant Gay, taking from him a receipt for the same, as a credit or payment on the judgment of Toomer, Gay & Co.; but the money was to be repaid in case that judgment should be excluded from participating in the fund.  The funds were afterwards ordered by the Circuit Court to be distributed to and among the complainants, to the exclusion of the judgment of Toomer, Gay & Co., but Gay refuses to pay the money received by him from the sheriff.  The bill further states, that the fund is insufficient to pay all the judgments, and that they are to be paid according to a certain specified priority, *pro rata;* and that the ascertainment of their proportions will depend upon an account to be taken: that the sheriff has not reported the amount of funds received by him, and that the exact amount thereof is unknown to the complainants, and prays a discovery; that Wynne, the sheriff, refuses to compel Gay to refund the money received by him, or to account for the same to the complainants, or to allow the complainants to use Wynne's name at law to recover the money from Gay.

To this bill the defendants demurred, assigning several grounds of error.

The first ground taken in support of the demurrer is, that the bill shows no ground of relief in equity as to Gay, because, it is said, he received the money upon his judgment, before notice of the writ of error, and while his judgment was in full force, and that he is not therefore liable to refund it.

To this there are two answers, either of which is sufficient. First, the money received by Gay, was a trust fund in the hands of Wynne, which, under the facts stated in the bill, could not have been·paid absolutely in discharge of the judgment claimed by Gay, without a violation of duty on the part of Wynne; and Gay received the money with notice that it was in Wynne's hands as trustee; second, it is stated in the bill that the money was to be repaid by Gay, in the event that his judgment shall be decided to be not entitled to a participation in it. The case is, therefore, wholly different from *Tiffany* v. *Johnson et al.*, 27 Miss. 232, relied on by the appellants.

The·second objection taken to the bill, is, that the claim is barred by the Statute of Limitations. This objection is not well founded. The bill shows that the money, after the decision of the Circuit Court, from which the writ of error was taken, was, by agreement between all the parties interested, left in the hands of Wynne, to be put out at interest, and after the termination of the litigation respecting it, to be paid over by Wynne to the parties adjudged to be entitled to it. The relation, therefore, of a direct trust was created between Wynne and the parties in interest, which would debar him of the benefit of the Statute of Limitations, and would preclude Gay, who had received the trust funds with notice, and under an agreement to refund them if required after the termination of the controversy, from setting up the statute.

Again, it is objected that the complainant's remedy was ample at law, by action or motion against the sheriff and his sureties at law. But this ground of objection is not well taken, for several reasons. First, the complainants are not entitled jointly, but their claims are several. The sum to which each is entitled is unascertained and unfixed, depending upon a *pro rata* distribution of the fund among them, and requiring an account to be taken, upon the principle settled by this court in its decision of the case. A joint action could not be maintained in all their names, because their interests are several. And a separate action would not be an adequate remedy, because the portion to which each of the numerous complainants is entitled, depends upon a calculation to be made of the claims and proportions of the other parties, which could

not properly be done but in one and the same proceeding, where all the claims together could be taken into consideration; second, an action at law for the entire sum demanded, could not have been maintained against Wynne and Gay jointly, and there might have been circumstances under which Wynne alone might not have been liable for the money placed in the hands of Gay, and Gay was certainly not liable for more than he received; third, it was necessary for the complainants to go into equity for a discovery of the amount of the funds due from Wynne, and for an account and distribution. For any, or all of these reasons, the remedy at law would have been embarrassed, and insufficient to give adequate relief.

The decree overruling the demurrer, is therefore affirmed, and the cause remanded, and the defendants required to answer, within sixty days.